FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VICTORIYONDO M.,[1] <br>             Plaintiff, <br><br>    vs. <br><br> COMMISSIONER OF SOCIAL SECURITY,[2] <br>             Defendant. | No. 1:18-cv-03155-MKD <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 14, 19 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 19. The parties consented to proceed before a magistrate judge. ECF No.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

8. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 14, and denies Defendant's motion, ECF No. 19.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless."  *Id.*  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.

Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's

impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER - 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## PROCEDURAL HISTORY AND THE ALJ'S FINDINGS

Plaintiff filed for Title II disability insurance benefits on October 22, 2009, and Title XVI supplemental security income benefits on November 9, 2009. Tr. 356-64. He alleged a disability onset date of October 31, 2008. *Id.* The applications were denied initially and upon reconsideration. Tr. 166-72, 174-85. Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on December 8, 2011, at which time the ALJ requested additional mental testing. Tr. 76-102. A supplemental hearing was held on May 1, 2012. Tr. 41-75. On June 14, 2012, the ALJ denied Plaintiff's claim. Tr. 137-59. The Appeals Council remanded the decision and directed the ALJ to further consider the opinion of Dr.

Genthe.  Tr. 160-63.  Plaintiff appeared for another hearing before the ALJ on January 28, 2014.  Tr. 103-31.  The ALJ denied his claims on March 3, 2014.  Tr. 15-40.  The Appeals Council denied review.  Tr. 1-4.

In March 2017, this Court granted Plaintiff's motion for summary judgment and remanded the matter to the ALJ for reconsideration of the medical opinions and Plaintiff's symptoms.  Tr. 1126-51.  On remand, the ALJ conducted a hearing and received additional medical and vocational testimony.  Tr. 1033-90.  On May 2, 2018, the ALJ again denied Plaintiff's claims.  Tr. 1003-30.

Initially, the ALJ found that Plaintiff's date last insured was December 31, 2008.[3]  Tr. 1009.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 31, 2008.  Tr. 1009.  At step two, the ALJ found Plaintiff has the following severe impairments: major depressive disorder, panic disorder, post-traumatic stress disorder (PTSD), cognitive disorder, personality disorder with antisocial features, and poly-substance dependence.  Tr. 1009.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 1010.  The ALJ then found that Plaintiff has the RFC to perform a full range of

---

[3] To obtain disability insurance benefits, Plaintiff must demonstrate he was disabled before his last insured date.  42 U.S.C. § 423(c); 20 C.F.R. § 404.1520.

work at all exertional levels and the basic mental demands of competitive, unskilled work, including the ability to:

> Understand, remember, carry out, and remember [sic] simple instructions. He can respond appropriately to supervision, coworkers, and usual work situations, and deal with changes in a routine work setting. These jobs should be those that can be learned within 30 days, by demonstration, and involve only simple work-related decisions and few workplace changes. He can have superficial and infrequent interaction with supervisors, public and coworkers. There should be no highly interactive or interdependent work groups.

Tr. 1012. At step four, the ALJ found that Plaintiff has no past relevant work. Tr. 1019. The ALJ found at step five that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform given his age, education, work experience, and RFC, such as industrial cleaner, kitchen helper, and laundry worker II. Tr. 1020. On that basis, the ALJ found that Plaintiff was not disabled, as defined in the Social Security Act, from October 31, 2008, through the date of the ALJ's May 2, 2018 decision. Tr. 1021.

Per 20 C.F.R. §§ 404.984 and 416.1484, the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI and disability

ORDER - 8

insurance benefits under Title II of the Social Security Act.  Plaintiff raises the

following issues for this Court's review:

1.  Whether the RFC compels a finding of disability;

2.  Whether the ALJ properly weighed the medical opinion evidence; and

3.  Whether the ALJ properly discounted Plaintiff's symptom claims.

ECF No. 14 at 1.

## DISCUSSION

### A. RFC

Plaintiff contends that, even if the ALJ properly assessed the RFC, Plaintiff

is considered disabled.  ECF No. 14 at 3.

"[T]he ALJ is responsible for translating and incorporating clinical findings

into a succinct RFC."  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006

(9th Cir. 2015).  "[A]n ALJ's assessment of a claimant adequately captures

restrictions related to concentration, persistence, or pace where the assessment is

consistent with restrictions identified in the medical testimony."  *Stubbs-Danielson*

*v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).  To the extent the evidence could

be interpreted differently, it is the ALJ's responsibility to resolve conflicts and

ambiguity in the evidence.  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d

595, 599-600 (9th Cir. 1999).  Where evidence is subject to more than one rational

interpretation, the ALJ's conclusion is upheld.  *Burch v. Barnhart*, 400 F.3d 676,

679 (9th Cir. 2005); *Hill*, 698 F.3d at 1158 (recognizing the court only disturbs the ALJ's findings if they are not supported by substantial evidence).

Here, the ALJ crafted the following RFC:

> [Plaintiff can u]nderstand, remember, carry out, and remember [sic] simple instructions. He can respond appropriately to supervision, coworkers, and usual work situations, and deal with changes in a routine work setting. These jobs should be those that can be learned within 30 days, by demonstration, and involve only simple work-related decisions and few workplace changes. He can have superficial and infrequent interaction with supervisors, public and coworkers. There should be no highly interactive or interdependent work groups.

Tr. 1012. Plaintiff argues, based on the RFC's social limitation of "superficial and infrequent interaction with supervisors, public and coworkers" and Kimberly Mullinax's 2014 vocational expert testimony, that Plaintiff is considered disabled. ECF No. 14 at 3. At the 2014 administrative hearing, Ms. Mullinax testified:

> Supervisors are typically around the worker on an occasional basis outside of that training period, and the worker would need to be able to work cooperatively with the supervisor and respond appropriately to instructions, so if they had no ability to do that, to respond to supervisors appropriately, then they would not be able to maintain employment.

Tr. 129-30. Plaintiff contends that based on Ms. Mullinax's testimony and the definition of "occasional," which means the condition exists up to 1/3 of the time, POMS DI 25001.001, that Plaintiff, as an individual who can only tolerate "superficial and infrequent" supervisor interaction, is incapable of occasional supervisor contact and thus is unable to maintain employment per Ms. Mullinax's

ORDER - 10

testimony. ECF No. 14 at 3-4. Plaintiff also argues the Court already partly

addressed this issue in 2017 by determining that the ALJ's failure to fully credit

Dr. Stephen Rubin's marked-supervisor-limitation opinion was not a harmless

error because it was consequential to the ultimate disability determination. *Id.* at 4

(citing Tr. 1137).

When the 2014 and 2018 vocational-expert testimony—both offered by Ms.

Mullinax—are reviewed in their context, Plaintiff's argument that Ms. Mullinax's

2014 testimony equates to a finding of disability is not supported by the record.

Ms. Mullinax's initial statement was offered generally, as recognized by her use of

the phrase "supervisors are *typically* around the worker on an occasional basis

outside of the training period" and pertained to the frequency of the interaction

between the worker and supervisors. Tr. 129-30 (emphasis added). In

comparison, Ms. Mullinax's 2018 testimony pertained to the worker's ability to

interact appropriately with supervisors, e.g., the nature and quality of the worker-

supervisor interaction, about which she testified that a worker who had no ability

to respond appropriately to instructions would be unable to maintain employment.

Tr. 130. Thus, in 2014, Ms. Mullinax was not asked the specific hypothetical

question presented to her in 2018, which was whether a worker who was limited to

superficial and infrequent interaction with supervisors, public, and coworkers,

along with the other RFC abilities, including that the worker *was* capable of

responding appropriately to supervision, coworkers, and usual work situations and changes given those quality (superficial) and quantity (infrequent) social-interaction limitations, was capable of performing work available in the national economy. Tr. 129-30, 1081-83. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2) (examining whether mental impairment interferes with claimant's abilities to function independently, appropriately, effectively, and on a sustained basis); *Mawyer v. Berryhill*, Case No. 2:16-cv-01140-JAD-GWF, 2019 WL 1246245 (D. Nev. Feb. 28, 2019) (discussing case law distinguishing between the frequency of interactions with supervisors or coworkers and the worker's ability to respond appropriately to supervision or with coworkers); *see also O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010) (finding the ALJ failed to include moderate limitation on responding appropriately to supervisors in the RFC; routine, repetitive tasks with simple instructions was insufficient). In short, the 2018 hypothetical posed included a qualification that the worker *was able* to respond appropriately to infrequent and superficial supervision for tasks that could be learned in thirty days, usual work situations, and changes in a routine work setting so long as there were few workplace changes. Tr. 1012, 1081-83. When asked this specific hypothetical question in 2018, Ms. Mullinax identified three available jobs: industrial cleaner, kitchen helper, and laundry worker II. Tr. 1020, 1081-83. Then Ms. Mullinax proceeded to testify in 2018, in response to

Plaintiff's counsel's question, that a worker who was unable to appropriately accept direction from supervisors would be incapable of gainful work. Tr. 1083. Thus, Ms. Mullinax's 2014 and 2018 testimony were consistent. If a worker was unable to appropriately interact with the supervisor, that worker was unemployable. Yet, a worker who was limited to infrequent and superficial interaction with a supervisor *and* could respond appropriately to supervision in that setting was capable of gainful employment. Accordingly, Ms. Mullinax's testimony does not compel a finding of disability based on the crafted RFC.

**B. Medical Opinion Evidence**

Plaintiff faults the ALJ's weighing of the medical opinions of Stephen Rubin, Ph.D.; Kenneth Asher, Ph.D.; Dick Moen, MSW; Mary Gentile, Ph.D.; Thomas Genthe, Ph.D.; and Tae-Im Moon, Ph.D. ECF No. 14 at 4-18.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a nonexamining physician's opinion. *Id.* at 1202. "In addition, the regulations give

more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1. Dr. Rubin

Dr. Rubin reviewed Plaintiff's medical record and testified at the supplemental hearing on May 1, 2012. Tr. 47-57. He opined that Plaintiff had an affective disorder; major depressive disorder, mild; PTSD; and personality disorder

absent substance abuse.  Tr. 50-51.  He opined that, as to the Listings B criteria, Plaintiff had mild restriction of daily living, moderate difficulty in social functioning, and moderate difficulty with concentration, persistence, and pace.  Tr. 52.  As to Plaintiff's mental RFC, Plaintiff had 1) moderate limitations with understanding and carrying out detailed instructions, maintaining attention, performing within a schedule, working in coordination and in proximity to others, performing at a consistent pace, responding appropriately to change, traveling to unfamiliar places, and setting goals or making plans independently; 2) a moderate to marked limitation with getting along with coworkers and peers; and 3) a marked limitation with interacting with supervisors.  Tr. 53-56.  Ultimately, Dr. Rubin testified that Plaintiff would have difficulty sustaining employment due to his difficulties getting along with coworkers and supervisors.[4]  Tr. 55-56.

The ALJ assigned great weight to Dr. Rubin's assigned functional limitations but rejected Dr. Rubin's opinion that Plaintiff would have difficulty

_____

[4]  The May 1, 2012 administrative transcript may contain an error at Tr. 56.  The transcript indicates that Plaintiff's counsel asked Dr. Rubin, "And so you seem to agree with Dr. Genthe, Dr. Genthe's opinion in that [Plaintiff's] capable of work, or would have difficulty sustaining employment?"  Tr. 56.  To which, Dr. Rubin replied, "yes."  Tr. 56.  The Court suspects that "capable" was supposed to be

ORDER - 15

sustaining employment due to his difficulties getting along with coworkers and supervisors.  Tr. 1016.  To the extent the ALJ gave weight to Dr. Rubin's assigned functional limitations, the ALJ was to incorporate those limitations into the RFC.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  To the extent Dr. Rubin's opinion was discounted by the ALJ, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Rubin's opinion, as it was inconsistent with Dr. Sharon Underwood's opinion, Tr. 573-86, that Plaintiff had no severe mental impairment.  *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Rubin's opinion that Plaintiff would have difficulty sustaining employment because it was inconsistent with the moderate limitations Dr. Rubin found present.  Tr. 1016 (citing Tr. 50-56).  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, including the physician's findings, and the quality of the explanation provided in the opinion.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Connett v.*

_____

*incapable* because Dr. Genthe opined that Plaintiff "is unlikely to function adequately in a work setting until his psychological symptoms have been managed more effectively" and highlighting that Plaintiff had difficulty sustaining prior employment. Tr. 889.

*Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). Here, the ALJ noted that Dr. Rubin opined a "number of moderate limits in cognitive functioning" and "moderate to marked limits, including a marked restriction in accepting instructions and responding appropriately to criticism from supervisors." Tr. 1016. Because Dr. Rubin opined a marked restriction as to Plaintiff's ability to accept instructions and respond appropriately to criticism, which served as the basis for Dr. Rubin's opinion that Plaintiff was unable to sustain work, it was not reasonable for the ALJ to discount Dr. Rubin's unable-to-sustain-work opinion on the grounds that Dr. Rubin otherwise opined moderate limitations. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2), and 20 C.F.R. §§ 404.1520a(c)(3), 416.945(c) (differentiating between a claimant's abilities to function independently, appropriately, effectively, and on a sustained basis); *Gatliff v. Comm'r of the Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999) (recognizing that a claimant must not only be able to do a job but must be able to sustain the job for a significant period of time).

Second, the ALJ discounted Dr. Rubin's opinion that Plaintiff would have difficulty sustaining employment because his opinion was unexplained. Tr. 1016. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228. Here, the

ALJ found that Dr. Rubin did not testify about the extent to which Plaintiff would have difficulty dealing with supervisors and coworkers and therefore Dr. Rubin's opinion that Plaintiff would have difficulty sustaining employment was unexplained.  Tr. 56.  However, the transcript reveals that Dr. Rubin testified about Plaintiff's difficulty holding a job in the past and also discussed that he reviewed Dr. Genthe's opinion that Plaintiff would have difficulty sustaining employment. Tr. 55-56.  Moreover, Dr. Rubin was a testifying medical expert.  If the ALJ deemed Dr. Rubin's explanation insufficient to support his opinion, Dr. Rubin was available to clarify the basis for his opinion.  *See Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (recognizing the ALJ may have a duty to develop the basis for a medical opinion through inquiry).  On this record, that Dr. Rubin did not explain the degree to which Plaintiff would have difficulty sustaining employment was not a legitimate reason, supported by substantial evidence, to discount Dr. Rubin's unable-to-sustain-work opinion.

Third, the ALJ discounted Dr. Rubin's opinion because it was inconsistent with the testimony of Dr. McKnight and the state agency medical consultants.  Tr. 1016.  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record as a whole.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  Here, as to Dr. McKnight, Dr. McKnight recommended psychological

testing in order to determine whether Plaintiff had psychological conditions impacting his cognitive and emotional health that were separate from Plaintiff's substance abuse. Tr. 87-92. As to the unidentified state agency medical consultants, the Court presumes the ALJ was referring to Dr. Sharon Underwood and Dr. James Bailey. Tr. 1016-17. Dr. Underwood opined that Plaintiff had no difficulties in social functioning, Tr. 674-86; Dr. Bailey agreed with Dr. Underwood's opinion, Tr. 692. Interestingly, the ALJ discounted the opinions of Dr. McKnight, Dr. Underwood, and Dr. Bailey on the grounds that these opinions were not consistent with the longitudinal evidence. Tr. 1015, 1017. Therefore, it was not a legitimate reason, supported by substantial evidence, to discount Dr. Rubin's unable-to-sustain-employment opinion on the grounds that it was inconsistent with the opinions of Dr. McKnight, Dr. Underwood, and Dr. Bailey—opinions the ALJ found inconsistent with the longitudinal record.

Fourth, the ALJ discounted Dr. Rubin's opinion that Plaintiff would have difficulty sustaining employment because whether one is able to work is an issue reserved to the Commissioner. Tr. 1016. A statement by a medical source that a claimant is "unable to work" is not a medical opinion and is not due "any special significance." 20 C.F.R. § 416.927(d). Nevertheless, the ALJ is required to consider medical source opinions about any issue, including issues reserved to the Commissioner, by evaluating the opinion in light of the evidence in the record and

applying the applicable factors.  SSR 96-5p at *2-3.  Here, Dr. Rubin offered more than an opinion that Plaintiff was unable to work.  Tr. 50-56.  Dr. Rubin identified limitations in a variety of skills and opined that Plaintiff was unable to sustain work due to his marked limitation with getting along with coworkers and supervisors.  On this record, it was not a legitimate reason, supported by substantial evidence, to discount Dr. Rubin's opinion on the grounds that it was on an issue reserved to the Commissioner.  In summary, the ALJ erred by failing to adequately weigh Dr. Rubin's unable-to-sustain-work opinion.

As to Dr. Rubin's opinion that Plaintiff had marked limitations in accepting instructions and responding appropriately to criticism from supervisors, the ALJ gave great weight to that opinion.  Tr. 1016 (citing Tr. 52-56).  Plaintiff argues that because the ALJ gave great weight to this opinion that a finding of disability is compelled based on Ms. Mullinax's testimony.  ECF No. 14 at 5 (relying on Tr. 129-30).  An ALJ must incorporate accepted limitations into the RFC.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Rounds*, 807 F.3d at 1006.  Here, the ALJ stated that he "accounted for [Dr. Rubin's opined limitations] with restriction to simple instructions with only simple work-related decisions and few workplace

changes" and "no more than superficial and infrequent interaction with supervisors, coworkers and the public." Tr. 1016.

First, Plaintiff asks the Court to conclude that any individual who has marked limitations in accepting instructions and responding appropriately to criticism is unable to work. On this record, where the ALJ gave significant weight to conflicting evaluations as discussed below, the Court is not inclined to reach such a conclusion.

Second, it is unclear whether these RFC limitations adequately incorporated Dr. Rubin's opinion that Plaintiff was markedly limited in accepting instructions and responding appropriately to criticism from supervisors. *See* SSR 85-15 (recognizing that the "knowledge that one's work is being judged and evaluated, even when the supervision is remote or indirect, cannot be tolerated for some mentally impaired persons"); *Bagby v. Comm'r of Soc. Sec.*, 606 Fed. App'x 888, 890 (9th Cir. 2015) (unpublished) (holding that RFC limiting claimant to simple, repetitive tasks, no public contact, and occasional interaction with coworkers did not account for limitation in responding appropriately to changes in a routine work setting); *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014) (determining that the RFC that included unskilled task, superficial contact with coworkers and supervisors, and no work around large number of people failed to include plaintiff's moderate difficulties with concentration, persistence, and pace and

temperamental deficiencies); *O'Connor-Spinner*, 627 F.3d at 621 (finding the ALJ failed to include moderate limitation on responding appropriately to supervisors in the RFC; routine, repetitive tasks with simple instructions was insufficient). Here, the ALJ failed to explain how the RFC accounted for the accepted limitations. Moreover, while Dr. Mary Gentile opined that Plaintiff's moderate limitations in maintaining attention and concentration for extended periods, interacting socially, and adapting could be accounted for by limiting Plaintiff to work away from the public with limited cooperative coworker interaction, and firm but fair supervision, and infrequent work-setting changes, Tr. 603-05, Dr. Rubin opined that Plaintiff was unable to sustain employment due to his limitations, Tr. 55-56. It is the ALJ's role to reconcile conflicting opinions and offer a meaningful explanation so that the Court could review the basis for the ALJ's decision. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (recognizing the ALJ must meaningfully explain the basis for his findings). By giving great weight to Dr. Rubin's opinion that Plaintiff had marked limitations in accepting instructions and responding appropriately to criticism from supervisors and also giving great weight to other moderate-limitation opinions, the Court is unable to meaningfully review the ALJ's decision that the RFC, which limited Plaintiff, in part, to simple tasks, few workplace changes, and superficial and infrequent interaction with supervisors, public, and coworkers, adequately addressed Plaintiff's functional limitations to

such extent that he would be capable of responding appropriately to supervision, coworkers, and usual work situations and changes. *See Amanda S.G. v. Saul*, No. 1:18-CV-304JD, 2019 WL 4594605, *4 (N.D. Ind. Sept. 23, 2019) (finding the ALJ failed to explain how the medical opinions that claimant had moderate limitations in responding appropriately to criticism from supervisors was adequately incorporated into the RFC that limited claimant to superficial interaction with supervisor); *see also Lohn E. v. Saul*, No. 18C7191, 2019 WL 2772529, at *3 (N.D. Ill. July 2, 2019) (highlighting that the record included testimony from the medical expert that claimant would benefit from occasional interactions with coworkers, the public, and supervisors given his marked restrictions with his ability to interact appropriately and to adapt to work-setting changes, and therefore the RFC containing similar limitations was supported by substantial evidence). The ALJ's error was not harmless given Dr. Rubin's (and Dr. Asher's) ultimate opinions.

Therefore, remand is necessary for the ALJ to reweigh Dr. Rubin's opinion against the other evidence and incorporate any accepted limitations into the RFC with sufficient analysis for the Court to review the ALJ's findings. Moreover, the record lacks a specific finding as to whether sobriety and mental health treatment would improve Plaintiff's social functioning and persistence and, if so, to what extent. Therefore, the Court is unable to rule—as Plaintiff requests—that because

Dr. Rubin opined that Plaintiff had a marked ability to interact with supervisors that he is unable to perform any work in the national economy.

### 2. Dr. Asher

Dr. Asher testified as the medical examiner during the administrative hearing in February 2018. Tr. 1063-79. Dr. Asher opined that given Plaintiff's psychiatric disorders, Plaintiff's ability to understand, remember, or apply information was mildly impaired; his adaption and self-management skills were mildly impaired; his ability to socially interact was moderately impaired; and his ability to concentrate, persist, and maintain pace (CPP) was moderately impaired. Tr. 1068-70. Dr. Asher also opined that Plaintiff's moderate limitations with social interactions and CPP, when combined, caused a marked limitation with his ability to persist over time and that Plaintiff would fairly soon into his employment be off task 20-25 percent of the time. Tr. 1073-78.

The ALJ assigned great weight to Dr. Asher's opinion that Plaintiff could perform simple instructions and tasks but discounted, without identifying a particular given weight, Dr. Asher's opinion that Plaintiff's ability to persist over time was markedly limited. Tr. 1016 (referring to Tr. 1068-78). As to Dr. Asher's discounted opinion, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Asher's opinion, as the opinion was inconsistent with

Dr. Underwood's opinion, Tr. 573-86, that Plaintiff had no severe mental impairment. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Asher's persistence opinion because the basis for the opinion was unclear. Tr. 1016. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 at 1228. Here, the ALJ found that Dr. Asher's marked-persistence limitation appeared to be based on Plaintiff's work history and "otherwise [it was] unclear as to the basis for such restriction." Tr. 1016. Dr. Asher was a testifying medical expert. If the ALJ was concerned that Dr. Asher's marked-persistence opinion lacked an evidentiary basis, the ALJ was to question Dr. Asher further to understand the basis for his opinion. *See Celaya*, 332 F.3d at 1183 (recognizing the ALJ may have a duty to develop the basis for a medical opinion through inquiry). Moreover, a claimant's prior work history is an appropriate consideration for the physician to consider. *See* 20 C.F.R. §§ 404.1527, 416.927 (recognizing that the ALJ is to consider "the extent to which a medical source is familiar with the other information in your case record"). On this record, that Dr. Asher did not explain the degree to which Plaintiff would have difficulty sustaining employment was not a legitimate reason, supported by substantial evidence, to discount Dr.

Asher's unable-to-sustain-work opinion. This was error. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs.").

Second, the ALJ discounted Dr. Asher's opinion because Dr. Asher was unable to opine as to the extent to which substance abuse impacted Plaintiff's functional abilities. Tr. 1016. An ALJ may properly reject a medical opinion that is rendered without knowledge of a claimant's substance abuse. *Cothrell v. Berryhill*, 742 Fed. App'x 232, 236 (9th Cir. July 18, 2018) (unpublished opinion). Therefore, the fact that a medical report reflects a claimant's functioning while using drugs or alcohol is a valid consideration to make in evaluating a medical opinion. *Chavez v. Colvin*, No. 3:14-cv-01178-JE, 2016 WL 8731796, at *8 (D. Or. July 25, 2016) (unpublished opinion). Dr. Asher testified both that he was unsure whether Plaintiff's functioning was worsened by an event that occurred between 2006 and 2008 and that Plaintiff's "got the raw material to function well, and something has been interfering with that. Mental Health and substance abuse are strong probabilities." Tr. 1075. In response, to further questioning by the ALJ, Dr. Asher testified that it was very likely that Plaintiff's loss of a loved one due to death, observation of gang-related trauma, and loss of child custody between 2006 and 2008 could have had a "very negative impact" on Plaintiff's functioning as he

had a poor way of coping with these problems.  Tr. 1075-76.  There were no further questions as to Plaintiff's substance abuse and the potential role it played in exacerbating Plaintiff's psychiatric conditions and symptoms.  On this record and with Dr. Asher available for further questioning, it was not reasonable for the ALJ to discount Dr. Asher's opinion on the grounds that he failed to account for Plaintiff's substance abuse.  *See Celaya*, 332 F.3d at 1183.

Third, the ALJ discounted Dr. Asher's opinion that Plaintiff's persistence was markedly limited as inconsistent with the other opinion evidence.  Tr. 1016-17.  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record.  20 C.F.R. §§ 404.1527, 416.927(c)(4).  Here, the ALJ found that Dr. Asher's persistence opinion was inconsistent with the 1) 2009 opinion of Dick Moen, MSW, who opined moderate cognitive and social functioning limitations, Tr. 1016 (citing Tr. 563-66); 2) 2009 opinion of Roland Dougherty, Ph.D., who opined that Plaintiff's social skills appeared to be "fairly good," his social judgment "may be somewhat deficient," and Plaintiff appeared to be "somewhat immature," Tr. 1017 (citing Tr. 579-86); and 3) the 2009 opinion of Mary Gentile, Ph.D., who opined that, due to Plaintiff's moderate limitations with

social functioning and CPP, Plaintiff would "work best away from the public" with limited cooperative coworker interaction and that supervision should be "firm, but fair," and that Plaintiff's work setting should have infrequent changes given his reactivity, Tr. 1017 (citing Tr. 589-605).  It was the ALJ's role to weigh the conflicting medical opinions.  While the ALJ's weighing of the opinions of Mr. Moen, Dr. Dougherty, and Dr. Gentile may be reasonable, the ALJ's weighing of Dr. Asher's persistence opinion, which was issued nine years after these opinions, was erroneously impacted due to the errors discussed *supra*.  Therefore, on remand, the ALJ is to reweigh the medical opinions.

A meaningful analysis will permit the Court to assess the ALJ's finding that by limiting Plaintiff to the tasks identified in the RFC, along with the social limitations, that Plaintiff is able to respond appropriately to supervision, coworkers, and usual work-place situations and changes.

### 3.  Other Challenges

Plaintiff also challenges the ALJ's failure to properly weigh or incorporate into the RFC the opinions of 1) Mr. Moen, to which the ALJ assigned great weight, Tr. 1016, 563-68; 2) Dr. Gentile, to which the ALJ assigned great weight, Tr. 1017, 589-605; 3) Dr. Genthe, who opined, amongst other limitations, that Plaintiff had moderate limitations with responding appropriately to usual work situations and to changes in a routine work setting and interacting appropriately with the public and

co-workers, to which the ALJ assigned great weight, and extreme limitations in interacting with supervisors, to which the ALJ assigned little weight, Tr. 1018, 891-93; and 4) Dr. Moon, who opined that Plaintiff's severe anxiety and depression interfered with his ability to work, to which the ALJ assigned little weight, Tr. 926-29, 1018.

Because the ALJ erred by misweighing Dr. Rubin's and Dr. Asher's opinions, the Court need not address the merits of Plaintiff's challenges to these other medical opinions.

### C. Plaintiff's Symptom Reports

Plaintiff contends the ALJ failed to rely on clear and convincing reasons in discrediting his statements about the intensity, persistence, and other limiting effects of his symptoms. ECF No. 14 at 18-20. Because the ALJ erred by misweighing Dr. Rubin's and Dr. Asher's opinions, the Court declines to address this challenge. On remand, the ALJ is to reconsider Plaintiff's statements about the effects of his symptoms. If the ALJ discounts Plaintiff's reported symptoms because of lack of treatment, the ALJ must consider whether Plaintiff's conditions were expected to benefit from treatment and/or whether any reasons offered constitute good cause for failure to follow or seek treatment. *See Orn*, 495 F.3d at 638; *Holohan*, 246 F.3d at 1205. The ALJ may consider developing the record as to whether Plaintiff's persistence and social difficulties are attributable to a

psychiatric condition—or drug or alcohol usage or other non-disability-related reason. Second, if the ALJ discounts Plaintiff's reported symptoms because Plaintiff offered conflicting reports as to his ability to get along with others, the ALJ must consider whether Plaintiff's conflicting reports were due to Plaintiff's psychiatric conditions or drug and alcohol abuse. Third, if the ALJ determines that a drug abuse and alcoholism (DAA) analysis is needed, the ALJ is to engage in the DAA analysis.

## REMEDY

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 14 at 1.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020. Under the

credit-as-true rule, where 1) the record has been fully developed and further administrative proceedings would serve no useful purpose; 2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and 3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

While the Court is mindful that this matter has been considered by an administrative law judge on three occasions, the Court determines that further proceedings are necessary because the record casts serious doubt that Plaintiff is in fact disabled, particularly if he received mental health treatment or abstained from drugs and alcohol. *See* 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."). For instance, although Mr. Moen opined that Plaintiff's limitations were not dependent on Plaintiff's drug and alcohol use, Tr. 563-68, Dr. Gentile noted that Plaintiff continued to abuse substances, "which appears to be

[Plaintiff's] largest issue," Tr. 601; and Dr. McKnight testified that Plaintiff's

substance abuse largely impacted his functional ability, Tr. 82-93. *See* Tr. 51, 54

(Dr. Rubin: noting that Plaintiff may have been medicating himself for years with

drugs or alcohol because of depression and anxiety); Tr. 888-89 (Dr. Genthe:

noting that Plaintiff's substance abuse may be a contributing factor to his

personality conditions); Tr. 1068, 1071, 1075 (Dr. Asher: same as Dr. Genthe).

Second, it is also unclear to what extent, if any, Plaintiff's limitations would be

eliminated or lessened by treatment and whether and when that treatment was

available to Plaintiff. *Compare* Tr. 585 (Dr. Dougherty: noting that Plaintiff's

prognosis was "fair and dependent upon his use of counseling and medication

resources"); Tr. 889 (Dr. Genthe: opining that treatment of six-to-nine months may

permit Plaintiff to regain necessary emotional functioning to work fulltime); Tr. 51

(Dr. Rubin: agreeing with Dr. Genthe that Plaintiff has the potential for

improvement if he has good treatment); *with* Tr. 566 (Mr. Moen: opining that it

may take two to three years to find the proper medication to treat Plaintiff's mental

health conditions). Moreover, as discussed *supra*, if the ALJ abides by the current

RFC, the ALJ must meaningfully explain the basis for the ALJ's finding that by

limiting Plaintiff to the tasks identified in the RFC, along with the social

limitations, that Plaintiff is able to respond appropriately to supervision,

ORDER - 32

coworkers, and usual work-place situations and changes. Further proceedings are necessary for the ALJ to resolve these conflicts in the evidence.

On remand, the ALJ is to order a consultative examination and obtain the testimony of a medical expert. The ALJ is to then conduct a new sequential analysis, including reconsidering Plaintiff's symptom testimony.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is neither supported by substantial evidence nor free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED September 30, 2019.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE